free discovery from Plaintiffs while their lawsuit was pending by having Plaintiff submit valuable financial information to CHASE, including an updated 4506T form.

### FIRST CAUSE OF ACTION
### WRONGFUL FORECLOSURE (NOD)
### (Against JPMORGAN, FIRST AMERICAN, MELLON)

130.   Plaintiffs incorporate by reference the allegations set forth above and below.

131.   California Civil Code § 2924(a)(1) exclusively limits who has authority to issue a Notice of Default to only the "trustee, mortgagee, or beneficiary, or any of their authorized agents."

132.   A Notice of Default is null and void if issued by any person or entity other than those described in California Civil Code § 2924(a)(1).

133.   In this case, the Notice of Default was recorded on May 19, 2009 by FIRST AMERICAN "as agent for the Current Beneficiary By: First American Title Insurance Company as Attorney-In-Fact."

134.   At the time Notice of Default was recorded and at the time the Subject Property was sold on April 14, 2010, FIRST AMERICAN was not the trustee of the Deed of Trust, as there was no recorded document substituting FIRST AMERICAN for Financial Title Company, which is the entity that is set forth as Trustee on the Deed of Trust recorded on March 30, 2007.

135.   At the time Notice of Default was recorded and at the time the Subject Property was sold, FIRST AMERICAN was not the mortgagee or beneficiary under the Deed of Trust, as there was no Assignment of Deed of Trust assigning JPMORGAN's beneficial interest to FIRST AMERICAN.

136.   At the time Notice of Default was recorded and at the time the Subject Property was sold, FIRST AMERICAN was not an authorized agent, notwithstanding the fact that FIRST AMERICAN alleges in the Notice of Default that it derives its authority "as agent for the current beneficiary under a Deed of Trust dated 3/23/2007 *(sic)*." The Notice of Default, however, is defective, as it leaves the identity of the beneficiary unnamed. FIRST AMERICAN, therefore, was not a duly authorized agent because it did not disclose the entity from which it derived its purported authority to issue the Notice of Default.

137.   JPMORGAN was the last recorded beneficiary under the Deed of Trust, but as set forth herein, JPMORGAN sold the Subject Loan to MELLON sometime on or before May 1, 2007 Cut-Off Date for the securitized trust, thereby extinguishing JPMORGAN's rights under the Subject Loan.

138.   MELLON, however, was not assigned beneficial interest under the Deed of Trust until the Assignment of Deed of Trust was recorded on July 2, 2009, which was two months after the Notice of Default was recorded on May 19, 2009.

139.   FIRST AMERICAN therefore could not be a duly authorized agent because, at the time the Notice of Default was recorded on May 19, 2009 and at the time the Subject Property was sold on April 14, 2010, JPMORGAN had extinguished its rights to the Subject Loan and MELLON had not yet recorded its beneficial interest under the Deed of Trust.

140.   Because Defendants did not strictly comply with the with the non-judicial foreclosure rules set forth under 2924(a)(1), the Notice of Default issued by FIRST AMERICAN is null and void and of no legal effect and the foreclosure sale of the Subject Property on April 14, 2010 is wrongful.

141.   Therefore, the foreclosure on the Subject Property should be reversed and/or set aside and all foreclosure instruments relating to the Subject Property should be expunged.

142.   **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

### SECOND CAUSE OF ACTION
### WRONGFUL FORECLOSURE (NOS)
### (Against JP MORGAN, FIRST AMERICAN, MELLON)

143.   Plaintiffs incorporate by reference the allegations set forth above and below.

144.   California Civil Code § 2924(a)(3) exclusively limits who has authority to issue a Notice of Trustee's Sale to only the following persons or entities: a "mortgagee, trustee or other person authorized."

145.   A Notice of Trustee's Sale is null and void if issued by any person or entity other than those described in California Civil Code § 2924(a)(3).

146.   In this case, the Notice of Trustee's Sale was recorded on August 26, 2009 by "First American LoanStar Trustee Services" as "duly appointed Trustee under and pursuant to Deed of Trust recorded 3/30/2007."

147.   FIRST AMERICAN, however, was not the duly appointed trustee at the time the Notice of Trustee's Sale was recorded, as there was no recorded document substituting FIRST AMERICAN as the new Trustee for Financial Title Company, the original Trustee set forth under the Deed of Trust recorded on March 30, 2007.

148.   Therefore, because Defendants did not strictly comply with the non-judicial foreclosure rules set forth under § 2924(a)(3), the Notice of Trustee's Sale is null and void and of no legal effect and the foreclosure sale of the Subject Property on April 14, 2010 is wrongful.

149.   Therefore, the foreclosure on the Subject Property should be reversed and/or set aside and all foreclosure instruments relating to the Subject Property should be expunged.

150.   **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
### FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION AND FALSE PROMISE
### (Against CHASE)

151.   Plaintiffs incorporate by reference the allegations set forth above and below.

152.   Under California Civil Code § 1710, one who willfully deceives another with intent to induce him to alter his position to his detriment or risk, is liable for damages.

153.   "Actual fraud" within the meaning of California Civil Code § 1572 and "deceit" California Civil Code § 1710 are defined to include, *inter alia*, (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true, commonly referred to as intentional misrepresentation; and (2) a promise, made without any intention of performing it, commonly referred to as a false promise.  California Civil Code § 1572(1), (4); California Civil Code § 1710(a), (d).

154.   As set forth in greater detail above, CHASE made numerous misrepresentations to Plaintiffs, all of which induced Plaintiffs to expend incredible amounts of time, money and resources in a futile attempt to comply with CHASE's loan modification requirements, while

CHASE dangled the illusory promise that they would in good faith negotiate some relief for Plaintiffs under the Subject Loan.

155.    The truth was, CHASE was not able to offer, nor did it intend to offer, Plaintiffs any meaningful relief under or modification of the Subject Loan, since CHASE knew or should have known that it was prohibited by the terms of the Pooling and Servicing Agreement to modify the Subject Loan in any manner which reduces the corpus of the securitized trust.

156.    The misrepresentations and false promises were intended to distract or discourage Plaintiffs from seeking other means of protecting their interests in the Subject Property, including but not limited to filing for bankruptcy to help Plaintiffs restructure their debt and stay the foreclosure on their home.

157.    Plaintiffs relied on CHASE misrepresentations and false promises because they reasonably thought that working directly with the bank to seek a loan modification was the best way to obtain financial relief while fulfilling their obligations under the Subject Loan.  Plaintiffs further reasonably believed that if they diligently complied with all CHASE's requests, that their home would not be shepherded towards foreclosure, nor sold out from under them without proper notice.

158.    As a result of CHASE's intentional misrepresentations and false promises, Plaintiffs have suffered damages, culminating in the loss of Plaintiffs' home, which also include, but are not limited to, the amounts Plaintiffs spent on third parties to assist them with their loan modification and foreclosure reversal, Plaintiffs' own loss of income and expenses related to the loan modification application and foreclosure reversal, and Plaintiffs' emotional distress.

***Specific Intentional Misrepresentations***

159.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented, on multiple occasions, that it would, in good faith, consider Plaintiffs for a loan modification if Plaintiffs defaulted on at least three mortgage payments.

160.    In reliance, Plaintiffs expended numerous amounts of time, money and resources in complying with CHASE's requests, and Plaintiffs allowed themselves to go deeply into arrears

on the Subject Property instead of seeking other ways to restructure their finances so they could continue making their mortgage payments.

161.    As set forth more fully above, these misrepresentations were made (1) by various CHASE representatives whose identities are known to CHASE via their telephone call records and audio recordings; (2) to Plaintiff Brad DeHaven; (3) over the telephone; (4) at the dates set forth hereinabove.

162.    The truth was that CHASE's review of Plaintiffs' loan modification was not conducted in good faith, but with the intent to distract Plaintiffs' from seeking other means to protect their interest in the Subject Property.

163.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented that it could, in fact, provide Plaintiffs with meaningful relief under the Subject Loan.

164.    In reliance, Plaintiffs expended numerous amounts of time, money and resources in complying with CHASE's requests, and Plaintiffs allowed themselves to go deeply into arrears on the Subject Property instead of seeking other ways to restructure their finances so they could continue making their mortgage payments.

165.    As set forth more fully above, these misrepresentations were made (1) by various CHASE representatives whose identities are known to CHASE via their telephone call records and audio recordings; (2) to Plaintiff Brad DeHaven; (3) over the telephone; (4) at the dates set forth hereinabove.

166.    The truth was that CHASE knew or should have known that it was unable to provide meaningful relief to Plaintiffs under the Subject Loan since CHASE was prohibited by the terms of the Pooling and Servicing Agreement to reduce the corpus of the securitized trust.

167.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented, on multiple occasions, that it would not foreclose on the Subject Property while loan modification was in review.

168.    In reliance, Plaintiffs expended numerous amounts of time, money and resources in complying with CHASE's requests, and Plaintiffs did not take other action to protect its interest in the Subject Property, including but not limited to filing bankruptcy.

169.    As set forth more fully above, these misrepresentations were made (1) by various CHASE representatives whose identities are known to CHASE via their telephone call records and audio recordings; (2) to Plaintiff Brad DeHaven and to employees of FINANCIAL HOPE FOR AMERICA; (3) over the telephone; (4) at the dates set forth hereinabove.

170.    The truth was that CHASE intended to distract or discourage Plaintiffs from seeking other means of protecting their interests in the Subject Property, including but not limited to filing for bankruptcy, while shepherding Plaintiffs' home towards foreclosure.

171.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented, on multiple occasions, that Plaintiffs' loan modification application was in active review.

172.    In reliance, Plaintiffs expended numerous amounts of time, money and resources in complying with CHASE's requests, and Plaintiffs did not take other action to protect its interest in the Subject Property, including but not limited to filing bankruptcy.

173.    As set forth more fully above, these misrepresentations were made (1) by various CHASE representatives whose identities are known to CHASE via their telephone call records and audio recordings; (2) to Plaintiff Brad DeHaven and to employees of FINANCIAL HOPE FOR AMERICA; (3) over the telephone; (4) at the dates set forth hereinabove.

174.    The truth was that CHASE intended to distract or discourage Plaintiffs from seeking other means of protecting their interests in the Subject Property, including but not limited to filing for bankruptcy, while shepherding Plaintiffs' home towards foreclosure.

175.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented that CHASE purportedly offered Plaintiffs a loan modification in October, which Plaintiffs allegedly refused.

176.   Despite its efforts to communicate with CHASE on a regular and ongoing basis, Plaintiffs never received any notice of this purported October 2009 modification offer prior to the foreclosure sale of the Subject Property on April 14, 2010.

177.   As set forth more fully above, these misrepresentations were made (1) by CHASE representative Angela; (2) to FINANCIAL HOPE FOR AMERICA employee Luis Ibanez; (3) over the telephone; (4) on March 3, 2010.

178.   In addition, these misrepresentations were made (1) by "Chase Home Lending Executive Office" (no individual named on signature line of letter) (2) to Bradley DeHaven; (3) via letter; (4) dated June 14, 2010.

179.   The truth was that, upon CHASE's discovery that Plaintiffs would shortly be seeking bankruptcy relief, CHASE intended to quickly and wrongfully fast track foreclosure of the Subject Property so that Plaintiffs could not stay the foreclosure through their bankruptcy filing.

180.   As set forth more fully in the General Allegations above, CHASE intentionally misrepresented that, based on Plaintiffs' alleged refusal of CHASE's purported October modification offer, Plaintiffs' loan modification was no longer in "active review."

181.   Plaintiffs had no knowledge of this communication prior to the foreclosure of the Subject Property on April 14, 2010.

182.   As set forth more fully above, these misrepresentations were made (1) by CHASE representative Angela; (2) to FINANCIAL HOPE FOR AMERICA employee Luis Ibanez; (3) over the telephone; (4) on March 3, 2010.

183.   CHASE knew or should have known that Plaintiffs would be unaware that the Subject Loan was taken off "active review," as CHASE did not actually communicate this significant change in status to Plaintiffs, but instead CHASE confusingly and contradictorily continued to represent to Plaintiffs that the Subject Loan was in active review both immediately prior to and following the Sale Date on the Subject Property, including the representation in CHASE's letter to Plaintiffs dated 04/28/2010, indicating Subject Loan's status as "Pending Review."

184.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented that it would re-open Plaintiffs' file to reverse its wrongful foreclosure of the Subject Property.

185.    In reliance, Plaintiffs continued to expend additional time, money and resources in complying with CHASE's requests, and Plaintiffs did not take other action to protect its interest in the Subject Property, including but not limited to commencing a lawsuit against Plaintiffs.

186.    As set forth more fully above, these misrepresentations were made (1) by Sabrina Pipkin at the Chase Executive Office; (2) to Plaintiff Brad DeHaven; (3) over the telephone; (4) at the dates set forth hereinabove.

187.    The truth was that CHASE intended to distract or discourage Plaintiffs from seeking other means of protecting their interests in the Subject Property, including but not limited to filing a lawsuit, while obtaining additional financial disclosure information from Plaintiffs.

188.    As set forth more fully in the General Allegations above, CHASE intentionally misrepresented that it would reconsider reviewing Plaintiffs application for a loan modification after Plaintiffs commenced litigation against CHASE.

189.    In reliance, Plaintiffs continued to expend additional time, money and resources in complying with CHASE's requests, furnishing CHASE with various updated financial information, including a current 4506T.

190.    As set forth more fully above, these misrepresentations were made (1) by Pamela Correll, Customer Care Research Specialist I; (2) to Plaintiff Brad DeHaven; (3) over the telephone and via email; (4) at the dates set forth hereinabove.

191.    The truth was that CHASE intended to discourage Plaintiffs from pursuing their lawsuit and to obtain improper free discover from Plaintiffs while their lawsuit was pending.

192.    All of these misrepresentations were made at the times and in the manner as set forth more fully herein with knowledge of their falsity and/or with reckless disregard for the truth.

193.    As set forth more fully herein, CHASE and its agents made these representations and promises to Plaintiffs with the intent to defraud them.

194.    At the time these representations were made, CHASE knew the misrepresentations were not true and that CHASE had no intention of performing their promises.

195.    CHASE made the misrepresentations with the intent to induce Plaintiffs to alter their position to their detriment.

196.    Plaintiffs did in fact actually and justifiably rely on CHASE's misrepresentations, during which time Plaintiffs, among other things, provided CHASE with extensive financial information regarding themselves and submitted at least eight separate, voluminous loan modification applications to CHASE.

197.    Such reliance resulted in harm to Plaintiffs, as, among other things, Plaintiffs could have taken action to prevent sale of the Subject Property by taking steps to secure the Subject Property through filing for federal bankruptcy relief and/or by bringing a lawsuit against Defendants, and thereby seeking a restraining order or preliminary injunction against Defendants' sale of the Subject Property.

198.    Upon information and belief, CHASE had advance knowledge of, authorized, and/or ratified its agents' acts of oppression, fraud, malice and/or conscious disregard.

199.    Defendants acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to direct benefit of Defendants, knowing Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiff and entitle Plaintiffs to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

200.    Indeed, CHASE and its representatives acted with the uttermost disregard in attempting to defraud Plaintiffs out of the Subject Property, as Plaintiffs were more than willing to work with CHASE to tender payment on the Subject Loan and enter into a loan modification to maintain the Subject Property and avoid foreclosure.

201.    **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION
## FRAUD AND DECEIT – INTENTIONAL CONCEALMENT
### (Against CHASE)

202.   Plaintiffs incorporate by reference the allegations set forth above and below.

203.   Intentional concealment is defined under Civil Code § 1572 and § 1710 as the suppression of a fact, by one who is bound to disclose it, or one who gives information of other facts which are likely to mislead another for want of communication of that fact.

204.   As set forth more fully herein, CHASE intentionally concealed from Plaintiffs the fact that the Subject Loan was subject to a Pooling and Servicing Agreement that prohibits any modifications that would reduce the corpus of the securitized trust, and that therefore CHASE intentionally concealed the fact the only type of modification that CHASE could offer to Plaintiffs would be a more costly loan.

205.   As set forth more fully herein, CHASE intentionally concealed from Plaintiffs the fact that CHASE receives certain economic advantages as servicer of a troubled loan which kick in at such time as the loan becomes three months or more in arrears.

206.   As set forth more fully herein, CHASE also provided Plaintiffs with numerous amounts of half-truths designed to confuse Plaintiffs and conceal from Plaintiffs the upcoming sale of the Subject Property, which took place on April 14, 2010.  These half-truths consisted of statements by CHASE that the Subject Loan was in "active review" for modification and that the Subject Property would not be sold or foreclosed pending such review both immediately prior and even immediately following the sale date.

207.   At the time CHASE these concealments and/or half-truths were made, CHASE knew the statements were likely to mislead Plaintiffs for want of communications of the true facts, and CHASE knew they were concealing material facts from Plaintiffs.

208.   CHASE knew the concealments and/or half-truths would induce Plaintiffs to alter their position to their detriment.

209.   Plaintiffs did in fact actually and justifiably rely on CHASE's concealments and/or half-truths, and Plaintiffs, therefore, among other things, did not take action to prevent the sale of the Subject Property by taking steps to secure the Subject Property through filing for federal

bankruptcy relief and/or by bringing a lawsuit against Defendant, and thereby seeking a restraining order or preliminary injunction against Defendants' sale of the Subject Property.

210.   As a direct and proximate result of Defendant's fraud, concealments, and/or half truths, Plaintiffs suffered and continues to suffer damages in an amount according to proof.

211.   Upon information and belief, CHASE had advance knowledge of, authorized, and/or ratified its agents' acts of oppression, fraud, malice and/or conscious disregard.

212.   Defendants acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to direct benefit of Defendants, knowing Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiff and entitle Plaintiffs to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

213.   Indeed, CHASE and its representatives acted with the uttermost disregard in attempting to defraud Plaintiffs out of the Subject Property, as Plaintiffs were more than willing to work with CHASE to tender payment on the Subject Loan and enter into a loan modification to maintain the Subject Property and avoid foreclosure.

214.   **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth

### FIFTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD
### (Against CHASE)

215.   Plaintiff incorporates by reference each of the paragraphs set forth above and below.

216.   California Civil Code §1573 provides, in pertinent part, constructive fraud consists of any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him. Constructive fraud exists where all the elements of actual fraud, save for fraudulent intent, are met.

217.    Based on the conduct described hereinabove, CHASE has committed constructive fraud against Plaintiffs.

218.    As a proximate result of the conduct of CHASE, as described hereinabove and below, Plaintiffs have suffered and will continue to suffer damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court.

219.    Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

220.    Defendants' conduct was willful, wanton, reckless, oppressive, and without regard for Plaintiffs' welfare such that Plaintiffs are entitled to an award of punitive damages.

221.    **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

### SIXTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### (Against CHASE)

222.    Plaintiff incorporates by reference the allegations set forth above and below.

223.    To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to plaintiff.

224.    As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.

225.    However, there are instances where the law imposes a duty on the lender. In California, the test for determining whether a duty exists between a lender and a borrower-client involves the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect plaintiff, (2) the foreseeability of harm, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

226.    As set forth more fully herein, JPMORGAN was not acting as a traditional lender, as JPMORGAN receives profits from the sale of loans such as the Subject Loan rather than through the long-term investment performance of the loan under traditional lending practices.

227.    As set forth more fully herein, CHASE also was not acting as a traditional lender, as CHASE receives profits from loan servicing fees, including fees it receives on loans, such as the Subject Loan, when they are deemed to be a troubled assets.

228.    In the course of processing Plaintiffs application for loan modification, CHASE made untrue representations to and/or concealed material facts from Plaintiffs, including facts concerning (1) the existence of certain loan modification restrictions which are set forth in the Pooling and Servicing Agreements, and (2) the payment of additional fees to the servicer once the loan becomes three months or more in default.

229.    In the course of processing Plaintiffs application for loan modification, CHASE also made untrue representations to and/or concealed material facts from Plaintiffs concerning the foreclosure sale date for the Subject Property, including whether such sale date had been placed on hold pending review of Plaintiffs' loan modification application.

230.    CHASE's conduct in making certain representations and concealing certain information from Plaintiffs were undoubtedly intended to affect Plaintiffs insofar as it caused Plaintiffs to perform certain actions, such as the preparation of numerous applications and disclosure of confidential financial information

231.    CHASE's conduct was also undoubtedly intended to cause Plaintiffs to refrain from performing certain actions, such as attempting to make ongoing mortgage payments on the Subject Loan or to file for bankruptcy prior to the sale of the Subject Property on April 14, 2010.

232.    CHASE also owed Plaintiffs a duty to act in good faith and deal fairly with Plaintiffs, a duty to refrain from engaging in unfair business practices, a duty to refrain from harming Plaintiffs or their property, or otherwise impairing Plaintiffs' rights.

233.    CHASE's conduct towards Plaintiffs in connection with the various loan modification applications violated CHASE's duty of care to Plaintiffs, as CHASE's intentional

misrepresentations and concealments of material facts harmed Plaintiffs in that it increased the likelihood that Plaintiffs would default on the loan and that Plaintiffs would not act to protect their interest in the Subject Property.

234.   Plaintiffs actually and justifiably relied on Defendant's misrepresentations and concealments to their detriment insofar as Plaintiffs spend untold amounts of time preparing various loan applications at the request of CHASE and as Plaintiffs relied on CHASE's representations that CHASE would, in good faith, consider Plaintiffs for a loan modification and CHASE would refrain from selling the Subject Property pending review of Plaintiffs loan modification application.

235.   As a direct and proximate result of Defendant's fraud, concealments, and/or half-truths as alleged herein, Plaintiffs have suffered and continue to suffer damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have therefore incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled according to proof.

236.   It is clear that moral blame should attach to CHASE's conduct and that public policy will be better served in prohibiting CHASE from encouraging borrowers to default on their mortgage payments so that CHASE can receive additional servicing fees for troubled loans. Public policy will also be better served by discouraging CHASE from extending the illusory promise to borrowers of loan modification assistance when such modification is in fact restricted under the governing Pooling and Servicing Agreements and therefore cannot afford borrowers true relief.

237.   **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL
### (Against CHASE)

238.   The elements of a promissory estoppel claim are (1) a clear and unambiguous promise; (2) reasonable and foreseeable of reliance; and (3) injury to the party asserting the reliance.

239.   CHASE informed Plaintiffs that they needed to miss three mortgage payments to be considered for a loan modification.

240.   CHASE also informed Plaintiffs that they would not sell the Subject Property while review of Plaintiffs loan modification application was pending.

241.   CHASE at various times misleadingly assured Plaintiffs that the Subject Loan was in active review for a loan modification notwithstanding the fact that CHASE was inexorably shepherding the Subject Property towards foreclosure.

242.   CHASE's representations to Plaintiffs implied that CHASE would, in good faith, attempt to work with Plaintiffs on the loan modification application.

243.   CHASE's representations to Plaintiffs also implied that CHASE could, in fact, offer Plaintiffs meaningful relief under the Subject Loan.

244.   It was reasonable and foreseeable that Plaintiffs would rely on CHASE's instructions to miss three mortgage payments, as Plaintiffs thought that cooperating with CHASE would be the best way to continue fulfilling Plaintiffs obligations under the Subject Loan

245.   Plaintiffs were not reasonably expected to realize that CHASE may have other ulterior motives for encouraging Plaintiffs to default on mortgage payments, such as CHASE's receipt of additional fees for servicing the Subject Loan as a troubled asset.

246.   Plaintiffs were also not reasonably expected to know that CHASE's ability to permit loan modification was actually restricted under a Pooling and Servicing Agreement, which prohibits CHASE from reducing the principal balance of the loan.

247.   Plaintiffs relied to their detriment on CHASE's representations that Plaintiffs should miss three mortgage payments by going deeply into arrears on the Subject Loan.

248.   Plaintiffs at all times communicated their willingness and eagerness to set up a payment plan with CHASE so that they could continue fulfilling their obligations under the Subject Loan, but such offers fell on deaf ears with CHASE.

249.   Instead, CHASE continued to string Plaintiffs along, month after month, requesting the Plaintiffs furnish CHASE with additional documents, while never putting forth any good faith effort to provide Plaintiffs with relief.

250.   Plaintiffs relied to their detriment on CHASE's representations by expending countless hours of time and resources communicating with CHASE and preparing and submitting at least eight separate loan modification applications.

251.   Plaintiffs also relied to their detriment on CHASE's statements that the Subject Property's loan modification application was still "in review," by not proceeding to file for bankruptcy in time to halt the sale of the Subject Property, as CHASE misled Plaintiffs into believing that no foreclosure of the Subject Property would occur.

252.   Plaintiffs suffered damages, including but not limited to the loss of their home, as a result of Defendants wrongful actions, misrepresentations and intentional concealment of information.

253.   **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200 et seq.
### (Against All Defendants Except FINANCIAL HOPE FOR AMERICA)

254.   Plaintiffs incorporate by reference the allegations set forth above and below.

255.   Plaintiffs are informed and believe, and on that basis, allege that Defendants' acts, as alleged herein, constitute unlawful, unfair and/or fraudulent business practices, as defined by California Business and Professions Code §17200 et seq.

256.   In addition Plaintiffs are informed and believe, and on that basis, allege that Defendants have violated California Business and Professions Code §17200 through engaging in a conspiracy to defraud borrowers, such as themselves, by setting up a scheme whereby Defendants generate revenue for themselves, not through the long-term investment of the Subject Loan, but through selling the Subject Loan and generating servicing fees, including fees it receives when the loan becomes a troubled asset.

257.   Defendants have set up a scheme where borrowers, such as Plaintiffs, are encouraged to default for three months on their mortgage payments, so that certain fees and insurance payments can be generated by administering the loan as a high risk or troubled asset.

258.     Defendants have set up a scheme where borrowers, such as Plaintiffs, are misled into believing that they can obtain meaningful relief on their loan through a loan modification, when the truth is that the only modification that Defendants can provide is to increase the cost of the loan.

259.     Defendants have set up a scheme where it is more economically advantageous for them to foreclose and resale properties, such as the Subject Property, rather than work with borrowers, such as Plaintiffs, to avoid default, since the revenues Defendants receive are derived from the sale and servicing of the loan, not through the long-term investment of the loan.

260.     Each of the Defendants agreed to the object of the conspiracy.  The Defendants agreed among themselves to take the illegal and improper actions described herein, including taking actions that violated state law, to reach the goal of maximizing their financial benefit from the Subject Loan at the expense of the Plaintiffs.  The Defendants' actions were undertaken with actual malice in that they were motivated by a desire to deceive Plaintiffs.

261.     Each of the Defendants committed acts in furtherance of the conspiracy and/or ratified the acts committed in furtherance of the conspiracy.

262.     Defendants, and each of them, committed the above-described acts pursuant to an agreement by and between Defendants to defraud Plaintiffs into entering the Subject Loan.  The purpose of this conspiracy was to rapidly generate a large volume of loans which could be securitized, bundled and resold on Wall Street to third parties while insulating Defendants from the effects of default and foreclosure on their balance sheets. Defendants used these proceeds to fund additional fraudulent, unfair and unconscionable loans to additional borrowers, which in turn were securitized and resold, perpetuating the cycle.

263.     The statute of limitations does not begin to run on any part of a Plaintiff's claim of civil conspiracy until the "last overt act" pursuant to the conspiracy has been completed.

264.     Plaintiffs are informed and believe, and thereupon allege, that Defendants sued herein under fictitious names committed acts in furtherance of the conspiracy, and/or lent aid and encouragement to their co-conspirators, and/or ratified and adopted the acts of their co-

conspirators, owed Plaintiffs a duty of care and are thus jointly and severally liable for all harm to Plaintiffs resulting from the conspiracy.

265.    As a proximate result of the conduct of Defendants, as herein alleged, Plaintiffs have suffered and will continue to suffer damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and has incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

266.    The aforementioned conduct of Defendants consisted of intentional misrepresentations, false promises, and/or intentional concealment of material facts known to them with the intention on their part of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to the direct benefit of Defendants, knowing Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiffs and entitle them to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of Defendants.

267.    **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

## NINTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTIES
### (Against FINANCIAL HOPE FOR AMERICA)

268.    Plaintiff incorporates by reference the allegations set forth above and below.

269.    At all times herein relevant, FINANCIAL HOPE FOR AMERICA, through its employees, created, accepted and acted in a fiduciary relationship of great trust for Plaintiffs' alleged benefit.

270.    FINANCIAL HOPE FOR AMERICA further placed itself in a position of trust by virtue of its claimed expertise represented by and through its agents and employees, including but not limited to Bob Cassidy and Luis Ibanez.

271.    FINANCIAL HOPE FOR AMERICA breached its fiduciary duties owed to Plaintiffs by failing to notify Plaintiffs of significant developments and changes in status regarding the Subject Loan while negotiating a modification of the Subject Loan on Plaintiffs' behalf, in conscious disregard of Plaintiff's interests.

272.    As a proximate result of Defendant's breach of its fiduciary duties, as described herein, Plaintiff has suffered, and will continue to suffer, damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court.  Plaintiff is entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiff has been forced to retain a law firm to enforce their rights and have incurred, and will continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiff is entitled to according to proof.

273.    FINANCIAL HOPE FOR AMERICA's aforementioned despicable conduct was made with the intention of causing injury and subjecting Plaintiff to a cruel and unjust hardship in a conscious disregard of Plaintiff's rights.

274.    Plaintiff is informed and believes, and on that basis alleges, that FINANCIAL HOPE FOR AMERICA acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiff, and to FINANCIAL HOPE FOR AMERICA's direct benefit, and with knowledge that its conduct was substantially certain to vex, annoy, and injure Plaintiff. Thus, Plaintiff is entitled to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of FINANCIAL HOPE FOR AMERICA.

275.    **WHEREFORE**, Plaintiff prays for judgment as hereinafter set forth.

    a.      For compensatory damages in an amount to be determined by proof at trial;

    b.      For special damages in an amount to be determined by proof at trial;

    c.      For general damages in an amount to be determined by proof at trial;

d.   For statutory damages in an amount to be determined by proof at trial;

e.   For treble damages in an amount to be determined by proof at trial;

f.   For punitive damages;

g.   For attorney's fees and costs of this action;

h.   For a judgment that the foreclosure of the Subject Property is deemed illegal and void, and that such foreclosure should be reversed and/or set aside;

i.   Plaintiffs unconditionally offer to tender to the extent required by law any amount due by virtue of the violation of California Civil Code § 2924 and the wrongful foreclosure and trustee sale of the Subject Property to the true holder of the note in due course or true beneficiary under the Deed of Trust;

j.   For judgment rescinding Subject Loan and the corresponding security agreement and setting forth terms of restitution;

k.   For expungement of any and all foreclosure instruments relating to the Subject Property;

l.   For removal of any and all derogatory information reported to any and all credit reporting agencies and/or bureaus relating to the transaction involved herein;

m.   For restoration of Plaintiff's credit scores and good name;

n.   For any prejudgment or other interest according to law;

o.   Such other relief as set forth and requested above, and

p.   Any other and further relief that this Court deems equitable and proper.

**JURY DEMAND**

Plaintiffs hereby demands trial by jury.

DATED:  August 19, 2011

Respectfully submitted,
UNITED LAW CENTER
A Professional Law Corporation


By: _/s/ John S. Sargetis_____
John S. Sargetis, Esq.
Attorneys for Plaintiffs